UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Richard Parker,
    Plaintiff

    v.                                    Civil No. 05-cv-380-SM
                                          Opinion No. 2007 DNH 068
MVM, Inc.,
    Defendant


**O R D E R**

Richard Parker brings this action against his former
employer, MVM, Inc., claiming it unlawfully terminated his
employment.  In his amended complaint, Parker advances state
common law claims for breach of contract, as well as state and
federal statutory claims for age discrimination.  MVM moves for
summary judgment asserting that, as to each of Parker's claims,
it is entitled to judgment as a matter of law.  Parker objects.
For the reasons set forth below, MVM's motion is granted.


**Standard of Review**

When ruling on a party's motion for summary judgment, the
court must "view the entire record in the light most hospitable
to the party opposing summary judgment, indulging all reasonable
inferences in that party's favor."  Griggs-Ryan v. Smith, 904
F.2d 112, 115 (1st Cir. 1990).  Summary judgment is appropriate

when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Int'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

Nevertheless, if the non-moving party's "evidence is merely colorable, or is not significantly probative," no genuine dispute as to a material fact has been proved, and "summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted).  The key, then, to defeating a properly supported motion for summary judgment is the non-movant's ability to support his or her claims concerning disputed material facts with evidence that conflicts with that proffered by the moving party. See generally Fed. R. Civ. P. 56(e).  It naturally follows that while a reviewing court must take into account all properly documented facts, it may ignore bald assertions, unsupported conclusions, and mere speculation. See Serapion v. Martinez, 119 F.3d 982, 987 (1st Cir. 1997).

**Background**

In March of 1997, at the age of 55, Parker was hired by MVM as a full-time Quality Assurance Manager ("QAM").  After serving in that role for approximately seven years, Parker expressed an interest in switching to part-time employment.  Because he had reached the age of 62 and was eligible for Social Security benefits, he informed MVM that he did not want to jeopardize his receipt of those benefits.  He also told MVM that he was no longer interested in the substantial amount of travel that was an essential element of his job (i.e., performing quality control inspections at sites in Vermont and New Hampshire).  Accordingly, Parker proposed that his position – that of QAM – be converted to a part-time position and suggested that MVM hire another person to assume the role of "Quality Control Monitor," who would perform the inspections that Parker had been doing in New Hampshire and Vermont.

MVM accommodated Parker's request and, in January of 2005, its Director of Federal Security Services, Michael Hahn, approved his change in status from full-time to part-time employment.  See Exhibit 9 to plaintiff's memorandum, Change of Status Form (document no. 28-11).  Shortly thereafter, however, MVM had a change of heart.  First, it appears not to have hired the Quality

3

Control Monitor Parker had requested/recommended to perform the
inspections in Vermont and New Hampshire.  Accordingly, in
February of 2005, it asked Parker to resume those inspections.
He refused, saying it would require more than the 11 hours of
work his new part-time position involved.  MVM was not pleased.

Then, MVM says it received word that it was not performing
to expectations under its contract with the GSA.  In response,
MVM undertook a review of that contract and realized that it was
required under the contract to employ a full-time QAM.  See,
e.g., Exhibit I to defendant's memorandum, Affidavit of Ty
Richards, MVM's Operations Coordinator for the Federal Protective
Service Contract (document no. 23-11) at 2.  But, according to
MVM, because of the performance issues under the GSA contract and
what it perceived as Parker's poor attitude, it did not want to
bring Parker back as the full-time QAM.  See Exhibit I to
defendant's reply memorandum, E-mail from Michael Hahn, MVM's
Director of Federal Security Services, dated March 24, 2005
(document no. 30-10) at para. 3.

Nevertheless, MVM decided to honor its commitment to provide
Parker with part-time employment and, on March 25, 2005, offered
to create a part-time position for him as an Administrative

4

Assistant II, reporting to the new QAM, at Parker's then-current rate of pay.  To fill the vacant full-time QAM position, MVM promoted an existing MVM employee (a man in his fifties), who had previously reported to Parker.

Despite the fact that he would be working in the same office and receiving the same pay, Parker was not happy.  He saw MVM's decision as a demotion to the newly created position and he refused to come to work.  Shortly thereafter, in April of 2005, Parker's attorney wrote to MVM, stating that Parker viewed its treatment of him as amounting to a constructive discharge.  In September of 2005, Parker filed suit in state court, which MVM removed to this court.[1]

By order dated June 20, 2006, the court granted MVM's motion to dismiss count one of Parker's complaint (wrongful termination).  What remain, then, are the following claims:

---

[1]    For purposes of ruling on MVM's pending motion for summary judgment, the court has assumed that Parker's transfer amounted to a constructive discharge.  Based upon the factual allegations set forth in Parker's affidavit (document no. 28-3), however, it is unlikely that transfer would result in "work so arduous or unappealing, or working conditions so intolerable, that a reasonable person would feel compelled to forsake his job rather than to submit to looming indignities."  Vega v. Kodak Caribbean, Ltd., 3 F.3d 476, 480 (1st Cir. 1993).  See also Porter v. City of Manchester, 151 N.H. 30, 42 (2004).

breach of contract (count 2); breach of the implied duty of good faith and fair dealing (count 3); age discrimination, in violation of New Hampshire's Law Against Discrimination, N.H. Rev. Stat. Ann. ("RSA") ch. 354-A (count 4); and age discrimination, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, et seq. (count 5).  MVM moves for summary judgment as to each of the remaining claims, saying there are no genuinely disputed material facts and claiming entitlement to judgment as a matter of law.  Parker objects.

## Discussion

I.   Counts Two and Three - Common Law Employment Claims

Before addressing counts two and three of Parker's complaint, it is probably appropriate to first consider the nature of his employment relationship with MVM.  "Under the governing law of New Hampshire, employees fall into two classes: contract employees and at-will employees."  Censullo v. Brenka Video, Inc., 989 F.2d 40, 42 (1st Cir. 1993).  That status dictates which legal remedies are available to an employee.  In this case, Parker asserts that he was a contract employee and, beyond that, says MVM could not fire him except for good cause. He is incorrect.

Absent some express provision that an individual's employment is for a specific period of time, he or she is presumed to be an at-will employee.

> Under [New Hampshire] law, the at-will status of an employment relationship is one of prima facie construction.  That is to say, unless an employment relationship explicitly provides for a definite duration, it is presumed to be at-will.  This is critically important when an employee challenges her ouster; an employer can give an at-will employee – even one who has been a stellar performer – her walking papers at any time, for any reason or no reason, unless a statute, a collective bargaining agreement, or some aspect of public policy proscribes firing the employee on a particular basis.

Smith v. F.W. Morse & Co., 76 F.3d 413, 426 (1st Cir. 1996) (citations and internal punctuation omitted).  Here, nothing in the written offer of employment MVM extended to Parker suggests that, if he accepted that offer, he would be anything other than an employee at-will.  See Exhibit 3 to plaintiff's objection, March 28, 1997 offer of employment ("Parker's Employment Contract") (document no. 28-4).

Although Parker is certainly correct in describing that document as a "contract" between himself and MVM (i.e., an offer that was accepted and supported by adequate consideration), it did not, without more, make him a "contract employee," as that

term of art is understood.  A "contract employee" – perhaps more accurately described as a "tenured employee" – is one who is employed for a specific period of time.  And, absent contrary provisions in his of her employment contract or collective bargaining agreement, an employee hired for a fixed time period cannot be fired during that agreed-upon period except for good cause.

The provisions of MVM's employee handbook reinforce the point that MVM did not, and never intended to, hire Parker as a tenured employee.  Among other things, the employee handbook provides:

> **Employment Offers**.  The employment offered by MVM, if accepted, is employment-at-will (see next section for an explanation of "employment-at-will"). . . ..
>
> **Employment at Will**.  MVM and its employees have an employment relationship known as "Employment at Will," in which both MVM and the employee have the right to terminate the employment relationship at any time – for any reason or for no reason at all.  No contract or other enforceable obligation is intended.  <u>Unless there is an executed contract duly signed by an authorized officer of MVM</u>, employment with MVM is "at-will." NOTHING HEREIN (NOR ANY OTHER STATEMENT OF POLICY) SHOULD BE INTERPRETED AS AN EXPRESS OR IMPLIED CONTRACT BETWEEN MVM AND AN EMPLOYEE.  Statements made by supervisors or managers that contradict the employee's at-will status are not binding on MVM.  Only MVM Executive Staff can alter the at-will employment relationship.

Exhibit H to defendant's memorandum, MVM Employee Handbook
(document no. 23-10) at 6 (emphasis supplied, capitalization in
original).  <u>See also</u> <u>Id</u>. at 19 ("Termination of Employment.  MVM
reserves the right to terminate any employee at any time, with or
without cause.  The decision to terminate employment rests solely
with MVM executive staff.").

In support of his claim that he was a tenured (or
"contract") employee, Parker points to the fact that his written
job offer from MVM was signed by MVM's senior vice president,
Karen M. Marquez.  Thus, says Parker, he had a written contract
for employment, signed by a duly authorized officer of MVM.  And,
invoking the highlighted terms of the employee handbook quoted
above, he asserts that his employment falls squarely within the
exception to employment at-will.

Parker is, perhaps understandably, confusing concepts.  The
mere fact that an employee has a written employment contract does
not compel the conclusion that he or she is a "contract
employee."  Again, the phrase "contract employee" is, no doubt,
the source of that confusion.  The critical aspect of the
relationship between employer and employee that distinguishes at-
will employment from tenured employment is not the existence (or

9

non–existence) of a written employment contract.  Instead, it is
the establishment (or absence) of a definite term of employment.
In this case, nothing in either Parker's Employment Contract or
MVM's employee handbook suggests that he was hired for a specific
term.

But, Parker counters, he <u>was</u> hired for a specific period of
time.  Parker's Employment Contract provides that he was employed
as "Quality Assurance Manager for the GSA New England contract."
<u>Id</u>. at para. 1.  As Parker points out, the GSA New England
contract was for a five year period.  Thus, Parker concludes that
he was hired (albeit implicitly) to act as Quality Assurance
Manager for the duration of MVM's contract with the GSA.  But,
even assuming that argument is sound, it fails to advance
Parker's cause.  The GSA contract expired well before Parker
sought part–time status and long before he says he was
constructively discharged.  Even accepting Parker's argument,
when the five–year GSA contract expired and he remained an
employee of MVM, his employment status would have changed to
employment at–will.

Consequently, when MVM allegedly constructively discharged
Parker, he was an employee–at–will and MVM could terminate his

employment for any reason or no reason at all (directly or
constructively) – provided, of course, that termination did not
implicate public policy concerns.  And, as noted above, Parker's
status as an at-will employee dictates the legal remedies that
are available to him.

    A.   Count Two – "Breach of Employment Contract"

    In count two of his amended complaint, Parker asserts that
MVM breached the terms of his employment contract by demoting him
without offering him the opportunity to resume his former full-
time position as QAM – wrongful treatment he says was designed to
induce his resignation and which amounted to a constructive
discharge.

    As an at-will employee, Parker's cause of action against MVM
arising out of his alleged constructive firing is limited to a
claim for wrongful discharge; he has no claim for breach of
contract.  See Brenka Video, 989 F.2d at 42 ("Contract employees
[i.e., "tenured" employees] are limited in their remedies for
breach by the terms of the contract.  In contrast, at-will
employees are limited in their remedies to claims for wrongful
termination.") (citations omitted).  In other words, tenured or
"contract" employees may pursue a claim sounding in contract,

11

while at-will employees must pursue a claim sounding in tort. See generally Porter v. City of Manchester, 151 N.H. 30, 38-39 (2004). Consequently, as a matter of New Hampshire law, Parker has no viable claim against MVM for having allegedly engaged in conduct toward him that "constituted a breach of the employment contract." Amended complaint at para. 38. As to count two of Parker's amended complaint, MVM is entitled to judgment as a matter of law.

B.   Count Three – "Breach of Employment Contract (At-Will)"

In count three of his amended complaint, Parker asserts that even if the court determines that he was an employee-at-will, he still has a viable claim against MVM for having breached its implied duty to deal with him fairly and in good faith when it constructively discharged him. Again, however, the court disagrees.

As noted above, as an employee-at-will, Parker's remedies for an alleged constructive discharge are limited to a tort claim for wrongful discharge. To prevail on such a claim, Parker must demonstrate two things. First, he must prove that MVM's decision to constructively terminate his employment was motivated by bad faith, malice, or retaliation. See Cloutier v. The Great

12

<u>Atlantic & Pacific Tea Co.</u>, 121 N.H. 915, 921 (1981).  Next, he
must show that he was constructively discharged because he
performed an act that public policy would encourage, or refused
to perform an act that public policy would condemn.  <u>Id</u>. at 922.

Here, even if it were assumed that Parker has identified
sufficient facts to suggest that MVM acted in bad faith or with
malice (a stretch), he has failed to point to any evidence
suggesting that it constructively discharged him because he
engaged in conduct that public policy would applaud, or because
he refused to engage in conduct that public policy would condemn.
As to that issue, all Parker says is that MVM constructively
terminated his employment because he refused to perform a task
(i.e., the site inspections in New Hampshire and Vermont) that
could not have been performed within the few hours he worked each
week.  He argues (erroneously) that public policy would encourage
such a refusal:

> It is clear that Parker was terminated for failing to
> carry out certain job functions that were not his
> responsibility and which [another employee of MVM]
> acknowledges could not be performed within his 11 hour
> work week.  Public policy does not permit a termination
> of employment based on a failure to perform an order
> from a superior to carry out duties that cannot be
> performed within the work week as defined by the
> employee's part time work status.

Plaintiff's objection at 12.  See also Exhibit 1 to plaintiff's memorandum, Affidavit of Richard F. Parker (document no. 28-3) at para. 15.  Parker's arguments and attempts to find support for that theory in New Hampshire precedent are unpersuasive. Accordingly, the court concludes that MVM is entitled to judgment as a matter of law as to count three of plaintiff's amended complaint.[2]

II.  Counts Four and Five – Age Discrimination Claims.

Finally, in counts four and five of his amended complaint, Parker alleges that his constructive discharge violated both state and federal statutes prohibiting workplace discrimination on the basis of age.  In response, MVM asserts that there is simply no evidence in the record to support a claim that it

---

[2]    Parenthetically, the court notes that, in its prior order, it dismissed count one of Parker's amended complaint (wrongful termination) on similar grounds.  As to that claim, however, Parker failed to allege that he was discharged because he engaged in conduct that public policy would encourage or because he refused to engage in conduct that public policy would condemn.  Instead, he said MVM violated public policy by constructively discharging him because of his age.  But, as the court noted in that order, because there is a statutory remedy available to employees who believe they have been victims of age-based discrimination, New Hampshire common law does not recognize a wrongful discharge claim arising out of that conduct.

violated either state or federal anti-discrimination
legislation.[3]

In cases such as this, where the plaintiff has no direct
evidence of unlawful age-based discrimination, the court employs
the now-familiar McDonnell Douglas burden-shifting framework.
See McDonnell Douglas Corp. v. Green, 411 U.S. 792 802 (1973).
See also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133,
142 (2000) (applying the McDonnell Douglas paradigm to claims
advanced under the ADEA); Sheppard v. River Valley Fitness One,
L.P., 218 F. Supp. 2d 38, 49 (D.N.H. 2002) (noting that the same
standard applies to claims brought pursuant to New Hampshire's
Law Against Discrimination).  So, to carry his initial burden as

---

[3]     As to Parker's claim that MVM's treatment of him ran
afoul of New Hampshire's Law Against Discrimination, it is
unclear whether Parker has properly exhausted available state
administrative remedies.  Until recently, that statute provided
no private right of action for alleged acts of discrimination.
In 2000, however, it was amended to provide a private cause of
action.  But, the statute expressly requires that such suits be
filed only "at the expiration of 180 days after the timely filing
of a complaint with the [New Hampshire Commission for Human
Rights], or sooner if the commission assents in writing."  RSA
354-A:21-a, I (emphasis supplied).  Here, the record is devoid of
any suggestion that Parker ever filed a complaint with the
Commission for Human Rights.  Accordingly, it is unclear whether
he may properly pursue a claim that his employer violated the
provisions of RSA ch. 354-A.  Nevertheless, because MVM does not
raise the issue, the court will assume that he has complied with
the statutory prerequisites to filing this suit.

to both his state and federal statutory claims, Parker must establish a prima facie case of age-based discrimination. To do so, he must show that: (1) he was discharged; (2) at the time, he was a member of a statutorily protected class (here, those who are at least 40 years old); (3) he was otherwise qualified for the position he held; and (4) MVM filled the vacancy created by his discharge.

For the purpose of addressing MVM's motion, the court will assume that Parker has carried his initial burden of making out a prima facie case of age discrimination (again, liberally assuming he has alleged sufficient facts to warrant the conclusion that he was constructively discharged). In response, MVM says its decision to transfer Parker from the part-time QAM position to Administrative Assistant II (at the same salary) was justified by legitimate, non-discriminatory, business concerns. First, it points out that Parker repeatedly discussed his desire to work only part-time, so as not to interfere with his receipt of Social Security benefits. Additionally, Parker clearly expressed his unwillingness to do the traveling necessary to perform inspections in New Hampshire and Vermont that were required by the GSA contract. Moreover, according to MVM, when it reviewed its contract with GSA, it realized that it was obligated to

provide a full-time QAM.  So, while it had agreed to allow Parker

to hold the QAM position as a part-time employee, it eventually

realized it could not honor that commitment consistently with its

contractual obligations to GSA.[4]

MVM says it decided not to return Parker to his former full-

time position as QAM after he steadfastly refused its request to

perform the February inspections and insisted that MVM was

obligated to provide him with the part-time employment it had

initially approved – a defiant, if not insubordinate attitude

that MVM plainly did not appreciate.  See, e.g., Affidavit of

Richard Parker at para. 20 ("In discussions that followed[,] I

was insistent that the change to a part-time Quality Control

Manager had been approved and that I was entitled to continue on

that basis."); Exhibit I to defendant's memorandum, Affidavit of

Ty Richards at 2 ("Mr. Parker refused to complete the [February]

---

[4]     Parker denies that MVM's contract with GSA required it
to provide a full-time QAM.  But, the specific requirements of
the contract are not critical.  What is important is MVM's belief
that it was required to provide a full-time employee in that
position and its desire not to return Parker to that position.
Shortly after Parker assumed his part-time status, it became
clear that someone had to perform the monthly inspections in
Vermont and New Hampshire.  When Parker refused, citing his part-
time status, MVM understandably realized that it would have to
hire someone to perform those duties – that is, a full-time
employee (or at least someone working more than 11 hours a week),
who was willing to travel.

inspections.  He was basically sabotaging the very program he helped to create and in which he previously had taken such pride.").  <u>See also</u> E-mail from Michael Hahn (document no. 30-10) at paras. 2-3 ("[Parker's] tone was such that he felt he was entitled to the position and wanted to dictate to management his return based on his own conditions/terms.  His tone during the conversation was somewhat confrontational.  He kept saying he had a COS [change of status form] and opined that the COS somehow endorsed his entitlement to the PT [part-time] QC position or his return to a FT [full time] slot.  He seems to want what he want[s] when he wants it[,] which is part of the problem.  I do not want to bring him back as the full time QC Manager.").

Finally, MVM says that although Parker had created the quality control program for the GSA contract and had ably run that program for several years, the program was no longer meeting the client's expectations.  Michael Hahn opined that the performance problems stemmed from "the lack of a robust [quality control] program," and suggested that it was time for a "change in leadership in this position."  <u>Id</u>. at para. 2.

In response to MVM's articulation of various legitimate, non-discriminatory reasons for his (alleged) constructive

discharge, Parker has remained silent.  Despite the fact that MVM
has met its burden of production under the McDonnell Douglas
framework, Parker has not acknowledged (nor has he attempted to
carry) his burden of demonstrating that MVM's proffered reasons
for his transfer/demotion are merely pretextual for unlawful age-
based discrimination.  Instead, he simply rests on the claim that
he has "establish[ed] a prima facie case for age discrimination
[and] MVM has not provided legitimate, non-discriminatory reasons
for its adverse actions relating to [him]."  Plaintiff's
memorandum (document no. 28-2) at 14.

     Parker's general assertion that MVM has not articulated a
legitimate, non-discriminatory basis for his alleged constructive
discharge is without merit.  As noted above, Parker was an
employee-at-will.  Consequently, it would have been sufficient
for MVM to simply say that the animosity Parker engendered when
he refused to perform the February inspections motivated it to
transfer (i.e., allegedly constructively discharge) him.  An
employee's attitude, even if it does not rise to the level of
insubordination, can provide a lawful basis upon which to
discharge an employee-at-will (again, assuming no public policy
implications).  But, MVM provided several other legitimate
reasons for its decision as well.  Bearing in mind that MVM's

19

burden is one of <u>production</u>, rather than <u>persuasion</u>, it has more

than carried that burden.  Consequently, under <u>McDonnell Douglas</u>,

Parker was obligated to present argument and evidence from which

a reasonable trier of fact could conclude that the reasons

offered by MVM for his constructive discharge were merely a

pretext for unlawful age-based discrimination.  He did not.


     Nevertheless, even viewing the record in the light most

favorable to Parker, and assuming he attempted to fashion that

evidence into an argument that MVM's stated reasons for his

constructive discharge were pretextual, he would still fail.  The

primary source of support for Parker's claim that his alleged

constructive discharge was motivated by age discrimination is the

e-mail authored by Michael Hahn.  According to Parker,

> Hahn's words in his March 24, 2005 e-mail that he
> wanted a more "robust NE program" smack[] of age
> discrimination in a circumstance where there was a
> complete lack of any documented record tending to
> demonstrate that there were any legitimate issues with
> Parker's job performance during the time he held the
> full time Quality Assurance Manager position from March
> 1997 through January, 2005.

Plaintiff's memorandum at 14.  The court disagrees.  As a matter

of law, under the circumstances, no properly instructed jury

could reasonably conclude that Hahn's expressed desire to seek a

more "robust" quality control program for the GSA contract was in
fact a proxy for age-based discrimination, or that it
demonstrated that MVM's articulated reasons for transferring
Parker were pretextual.

In short, Parker's memorandum of law fails to point to facts
or advance arguments sufficient to undermine the credibility of
MVM's explanation for its actions.  Even if Parker's memorandum
had discussed other language in Hahn's e-mail (i.e., his desire
to "avoid any legal action/claim by Richie" or his statement that
"this course of action would limit the company's liability if
Richie wanted to somehow seek redress"), that, too, would be
legally insufficient to cast doubt on MVM's proffered explanation
for transferring Parker.  Hahn's desire to avoid or, at a
minimum, minimize the company's potential legal exposure reflects
his understanding of the risks facing employers who terminate (or
arguably constructively discharge) individuals who fall within a
protected class.  As the court of appeals has noted, "we think it
likely that the potential for legal action is routinely addressed
when company officials meet to consider terminating an employee."
Wallace v. O.C. Tanner Recognition Co., 299 F.3d 96, 101 (1st
Cir. 2002).  Similarly, stray remarks about an employee's age
and/or inquiries related to his or her potential retirement plans

21

of the sort identified in Parker's amended complaint are, without
more, insufficient to call into question an employer's otherwise
credible non-discriminatory explanation for its actions.  Id. at
100-01.

Because Parker has failed to point to any trial-worthy
issues that might undermine MVM's articulated reasons for having
(allegedly) constructively discharged him, MVM is entitled to
judgment as a matter of law as to Parker's ADEA claim (count
five), as well as his claim under New Hampshire's Law Against
Discrimination (count four).

**Conclusion**

No one appears to doubt that while he worked for MVM Parker
was a solid, contributing employee who received positive
employment reviews.  So, when he informed MVM that he was no
longer interested in the travel his job required and would prefer
to switch to a part-time schedule involving no more than 11 hours
each week (so he could begin collecting Social Security
benefits), MVM accommodated that request.  If it had been
motivated by some discriminatory age-based animus to encourage
Parker to retire, MVM could have taken that opportunity to simply
refuse his request.  It did not.

Very soon thereafter, however, MVM decided that it needed, or wanted, a full-time employee acting as its QAM (whether it based that decision, as Parker says, on an erroneous reading of its contract with GSA is not relevant).  Again, however, it decided that, rather than fire Parker, it would attempt to accommodate his desire to remain a part-time employee.  So, it created a new position specifically for Parker, and offered him that job, at his then-current rate of pay.  For whatever reason(s), Parker was displeased with that decision and, erroneously believing that MVM was legally obligated to either keep him in the part-time QAM position or restore him to his former full-time position, elected not to accept the offer MVM extended to him.

At that point, rather than retire, Parker challenged MVM's management decisions as amounting to a constructive discharge – one he believed was unlawfully motivated by age-based discrimination, in breach of his employment contract, contrary to established New Hampshire public policy, and in violation of both state and federal anti-discrimination statutes.  But, for the reasons discussed above, MVM has demonstrated that there are no genuinely disputed material facts and it is entitled to judgment

as a matter of law as to all remaining claims in Parker's amended
complaint.

MVM's motion for summary judgment (document no. 23) is
granted.  The Clerk of Court shall enter judgment in favor of MVM
and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

May 22, 2007

cc:  Arthur G. Greene, Esq.
     David W. McGrath, Esq,
     Christopher Cole, Esq.